You can call the first case for us. AEB Merger v. Barnett, Azari And can the attorneys approach the bench, please, and identify yourselves for the record? Philip Nelson, Your Honor, for the appellant. Adam Goodman for the appellee, and the appellee is actually the nominee in the investments. Thank you, thank you. Counsel, you'll each have 15 minutes. If the appellant would like to reserve some time for rebuttal, you can tell me. Your Honor, could I reserve three minutes for rebuttal? Absolutely, and that was a microphone in front of you, actually a recording device, not a microphone, so please keep your voices down. Very good. And even though I said 15 minutes, we do tend to interrupt, so we will certainly take that into consideration in terms of your time. Thank you so much. I'm sorry, counsel, I guess the show says you can begin whenever you're ready. May it please the Court, good morning to Your Honors, Judge Lampion, Judge Walker, Judge Reyes, and I'd like to wish a good morning to counsel for the appellee, Mr. Ed. Thank you, Mr. Goodman, as well. Your Honors, this case raises a procedural question, and specifically that question is, what is the process by which a plaintiff can serve an administratively dissolved LLC under the Illinois LLC Act, the Limited Liability Company Act? Below, the appellee argued as a petitioner under a 1401 petition, and the trial court agreed that this Court's prior opinion from 2016, John Ispond Construction against Longwood Towers, which I think the parties referred to either as Ispond or Longwood, just to make sure that that's clear, controlled in the matter. So how do we distinguish Longwood, Mr. Nelson? Thank you, Your Honor. I think that there are three arguments here. I think the first would be that we think it was actually wrongly decided. If you're going to distinguish the case, there are two grounds for that. First, after Ispond was decided, the Illinois legislature amended the LLC Act to clarify what provisions of Article 35 of the Act apply to an administratively dissolved LLC. Those sections were already in the Act at the time, and our overruling argument is that the Longwood Court missed or overlooked the appropriate section of the Act that deals with the powers of an administratively dissolved LLC, as opposed to one that has been voluntarily dissolved by the members. But the other way to distinguish that case would be that here, unlike in Longwood, Omni was reinstated. And the – I think it's Section 35-40D of the LLC Act specifically provides that upon the filing of an application to reinstate, the limited liability company's existence is deemed to have continued without interruption from the date of the issuance of the original notice. And that the limited liability company shall stand revived with the powers, duties, and obligations it had as if it had not been dissolved. And all the acts and proceedings of its members, its managers, its employees, and its agents acting or purporting to act in those capacities shall be deemed legal and valid, but for the dissolution shall stand ratified and confirmed. So if this Court were disinclined to overrule its prior case, it could at least here – We don't really overrule, do we? I mean, that's pretty much the province of the Supreme Court. Fair enough, Your Honor. I think this Court could find that under the circumstances here, a different result should carry. I think there are – I think there are significant differences, Cetreas, in the facts. And in particular, in the Longwood case, it was actually the members of the LLC that were the ones that were called to the court for the action.  The members of the LLC, the silent members of the LLC, who were – brought the petition to vacate the judgment because, effectively, they were being pursued on grounds of wrongful distributions, et cetera. And basically, they argued they had no opportunity to defend against the underlying default. Here, the LLC itself has been revived and is seeking to challenge and vacate the judgment. But our argument is, of course, that the entity was properly served because the registered agent did have the authority to receive service, did, in fact, receive in-hand service. And you have – That was one question I could not find. Where was Mr. Boltright served? Was it at the office of the registered agent or the principal place of business? No, Your Honor. It was – I actually have that open on my desk. I have the affidavit of service, if you need me to cite to the record on that. I just want to – I just wanted to – let me – my thought process. Yes, yes, Your Honor. It would have been great if he was served at least at one of those places. That's right. And let me address that, Your Honor, because I think I know – I think I know what you're directing to there, which is there's some language in the Longwood decision, which I think is dicta, where they point out that the individual who was served as the agent was not served at the principal place of business and was not served at the office that was designated as the office of the registered agent. But there was nothing in the Act that requires that that is where the individual who is the registered agent be served. Section 1-50A simply says that the registered agent must be served, and it doesn't designate a particular place to do that. Right. So shouldn't we look at Longwood in terms of the facts that were applicable to Longwood and only in that regard? In other words, Your Honor, if I understand correctly, cabin Longwood to its facts. Right. Certainly this Court could do that, and I think underlying Longwood, as I was intimating, there's references to the consideration of substantial justice. I think in the Longwood case, the Court simply felt that an injustice had been done, which it simply wasn't fair to hold these individuals who were otherwise innocent responsible for wrongful dividends when they had no opportunity to defend. Here, I think the entity and the two members of the LLC certainly had the opportunity to defend the LLC against the claims. In particular, I would point out that the registered agent, who was also a member of Mr. Boatwright, did in fact intervene in the case or appear in the case, had the default judgment against himself vacated, proceeded to defend it and lost on summary judgment. And he provided an affidavit indicating that he was served in his personal as well as his registered agent for the corporation capacities. That is correct, Your Honor. And talked to the lawyer for the company. I'm sorry, Your Honor? I said and talked to the lawyer for Omni. And talked to the lawyer for Omni as well. Now, I want to also draw your attention to something else. So you mentioned in your brief that Section 35-30C grants an administratively dissolved LLC in its wind-up period all of the powers granted to an LLC under Section 1-30. And that would include the power to elect managers and appoint agents of the LLC. So who is it that elects these managers and appoints agents from an administratively dissolved LLC? In the – I would say in the case of an administratively dissolved LLC, there would be – I think the Act provides that any members who have not been wrongfully dissociated can continue to participate in the winding up and the dissolution of the LLC. Yes. So if it's the members, if it's the members, Omni asserts that a dissolved LLC has no members. So in that scenario, where an LLC is administratively dissolved yet retains its Section 1-30 power to elect managers and appoint agents, who is it that does so if the LLC no longer has members? Two answers to that. First, with respect to Omni's observation, that's simply not supported by any citation to case law or to the statute itself. As I pointed out, the statute itself describes how members who have not been wrongfully disassociated continue to have the ability to participate in the winding up of the entity. There's also the concept that the – there's a – if there's only one member left, that that individual's representative can conduct the winding up of the LLC. This is under Section 35-4, I believe. I'd have to go back and look at the exact citation on that. But the point is the administrative dissolution of the entity itself does not, in fact, obliterate the LLC and does not wipe out the capacity that the individuals have as members. Indeed, even in the Longwood case, the Court recognized that the individuals who brought the petition there still had standing, and that standing was based on the fact that they had been members of this administratively dissolved LLC. So I think it's simply a misreading of the statute to say that once the Secretary of State despises certificate of dissolution with respect to an LLC simply because they failed to file their annual reports or pay the annual fee, that that somehow wipes out all of the relationships between the individual members and the LLC. I think you have to look to what the Act specifically says. And I think the Act, when you look at Article III of the LLC Act in its entirety, creates an entire regime as to how we should treat the administratively dissolved entity and what powers it has and what to do with it when it's in this limbo, this administrative dissolution period, which I think you can look to, as we point in our brief, you can look to the Corporations Act, where the courts have observed that administrative dissolution of a corporation isn't intended to be punitive. It isn't intended to destroy the corporation. It's intended to coerce compliance with the provisions of the Act. And I think the same thing is clearly true with respect to the provisions of the LLC Act as it relates to an administratively dissolved LLC. Was there also service by publication in this action at all? I don't believe so, Your Honor. I don't recall seeing that. No. Okay. With respect to one of the arguments I wanted to address is with respect to the reinstitution of the LLC under Section 3540D. The Court below rejected this argument based on the idea that there was – it simply said that Section 150, which talks about service, and Section 35-40, they simply don't work that way. I think much like the Longwood Court, I think the Court fails to – the Court below failed to read the statute in its entirety and to reconcile its various provisions. The Supreme Court – our Supreme Court has been very clear that an act has to be read that way. You can't simply read one provision in isolation from the rest or read it in such a way that it would effectively nullify differences in language or different provisions of the Act. And I think by ignoring the differences between 35-3, which was the provision relied on in Longwood, and 35 – 35-30, which is the provision that applies to administratively dissolved LLCs, the Court has – the Court effectively nullified the language with respect to the specific powers, the good-standing powers that an administratively dissolved LLC has. But in doing so, it's interesting. The Court – the trial court below observed that – it cited to subsection 3 of Section 150-B and noted that that service provision, Section 150, is the service of process provision. Pointed to subsection 3, it says, well, when you have a – it specifically says when you have a limited liability company that's dissolved, here is the process by which you are supposed to serve. You're supposed to serve on the Secretary of State. I think this in itself was an error for a very specific reason. This section, so subsections 3, 4, and 5 of Section 150, were added in 2013. Those provisions were not in the LLC Act back in 2011 and 2012 when Omni here was – when the complaint was filed and Omni was served. The only provisions of the Act with respect to this provision that were in place were subsection 150-B1 and 2, which simply say that whenever the limited liability company shall fail to appoint or maintain a registered agent or wherever the – So Omni appointed somebody, right? Omni appointed somebody. That's right. What did Omni – not the Secretary of State's office, but what did Omni do with respect to maintaining its registered agent? It didn't take any action, did it? I don't think it needed to maintain – take any action. Any more than an LLC in good standing needs to take any particular action to maintain the status of its registered agent. I think that when that reads into the Act, something that is not there. And also there's permissive language in the Secretary of State shall be irrevocably appointed as an agent of an LLC upon whom any process, notice, or demand may be served. That's correct, Your Honor. It's not mandatory language. It's permissive language. I think that – I think that is correct, Your Honor. And I think that what this section and then the changes to the section that I referenced, adding sections 3, 4, and 5, deal with is you can have a situation where an entity is dissolved and yet the requirements of paragraphs 1 and 2 are not also applicable. So in other words, for the Secretary of State to become the registered agent, first the entity has to be dissolved. But then section 3 says, in addition, the conditions of paragraph 1 and paragraph 2 exist. Now that's – the use of and means it's conjunctive means. All those conditions have to exist. So not only does the LLC have to be dissolved, but also you have to be – you have to have an LLC that's failed to appoint or maintain an agent, and you have to have a situation where that agent can't be found at the registered office or the principal place of business. In other words, you try to serve it by certified mail, and the mail is returned, you know, returned to center because there's nobody at that address anymore. That's not what happened here. The registered agent wasn't a company. It was an individual. That individual was found in the State of Illinois in person and was hand-delivered a copy of the complaint and summons. You can't have better service than that. With – I believe, Your Honor, that that – let me – if I may, Your Honor, maybe I could address the – what was my second argument, which was – I was going to ask if you would just address that – your retroactivity. Your retroactivity. Yeah. So it's clear – there's really two cases that we're talking about here. One is the Thornton case, and one is the Doe against the Diocese of Dallas case, the latter being the Illinois Supreme Court case. Those cases make clear that if you're going to apply a statute retroactively, if the change is substantive, then there has to be something in the legislative history that establishes that the legislature intended it to be retroactive. If it is a procedural change, then the court may apply it retroactively regardless. And here I think there's two arguments that need to be made. The first is that the provisions that we're talking about here are procedural in nature. We are talking about what is the process. And, in fact, I think it's Section 30- – 35-50. It's called Procedure for Administratively Dissolvent Company. But what we're really talking about is what is the process by which an LLC is served. Now, any change in process is going to have – is likely to have some kind of substantive effect, right? That's – serving a complaint has a substantive effect. But the question before this Court is, how do you serve an LLC that is administratively  That's a procedural question. And I think what the legislature did here in 2017 by adding that single provision to Section 35-30, I believe it's D, effectively what they did was to say, no, you don't apply Section 35-3, which says that a dissolved LLC is silent as to the powers, right? That's the provision that Longwood relied on. Instead, look to 35- – I believe it's 25, where it identifies the – sorry, 35-30, which says that the LLC continues to have all the powers of an LLC under Section 1-30, which is the good standing powers, including the powers to appoint agents. Now, I think the Longwood Court sort of casts this in terms of power and authority because it's talking about the agent. But, again, I think when you're trying to determine whether a question is procedural or substantive, you have to look at the language from the Thornton case, which is, does this – does the change affect vested rights? And here I think the answer on that is no. It simply – in our particular case, you might find other cases where what – who continues to have powers, who can act on behalf of an LLC might have a substantive effect, but here the question is really one about how do you serve – how do you serve an entity that is administratively dissolved? It is totally a question of process, and I think the Court can limit the analysis to that question in order to answer this case if it wanted to determine that. Just in fact, this amendment to the statute effectively should be applied retroactively and should be used to overrule the law. And there was no language in the statute regarding the amendment whether it applied retroactively or – I will be candid with you, Your Honor. I've looked through the legislative history. It's – there's nothing there. This is simply one subsection of the Act. It doesn't say anything about why this language was added. I think it's telling that it was added the year after Longwood was decided. I think it's – I think it's significant that you have two provisions of the LLC that are already in there, and then only – the only change that the Court makes is effectively to say, no, no, no. When you're dealing with an administratively dissolved LLC, don't look to this section of the Act. Look to this section of the Act. And just in that sense, it's really – it's clarifying. Unless Your Honors have any additional questions, I think I'll rest at this time. Thank you. Thank you, Your Honor. May it please the Court. My name is Adam Goodman. My client, the appellee, is Omni Investments. A dissolved LLC doesn't maintain a registered agent or members or managers. It's dissolved. How does it fail to maintain? Meaning Omni – what action of Omni's took place to fail to maintain it? Because that was just on paper. You didn't file the necessary paper with the Secretary of State's office. Well, the company went out of business. It stopped doing any business. As part of going out of business and stopping doing any business, it stopped filing annual reports. And the record below – it stopped paying the $75 a year fee to the Secretary of State. And the record below shows Mr. Boatwright and Mr. Rosari were the two people who owned Omni and ran Omni. The record below shows that Mr. Boatwright, who cooperated with Mr. Nelson and ABB, Mr. Boatwright put in an affidavit aiding ABB, acknowledging that he was given the paperwork. Mr. Rosari put in an affidavit saying that he knew nothing about this lawsuit. Nothing whatever about this lawsuit. And he learned of it only when ABB used this 2012 judgment to file a foreclosure lawsuit to try and take away an apartment building that Mr. Rosari owns in 2022. And that is what prompted him to hire counsel. And that is what prompted him to learn of the existence of the 2012 lawsuit. And that will be important later on when we talk about whether this affects substantive rights. So we have these dueling affidavits, right, with respect to knowledge of the case. But this is a summary judgment. Don't you agree that summary judgment is a drastic measure, right? Right. And Judge Schneider – Judge – I don't think Judge Schneider weighed into or decided whether – to whatever extent there was any tension between Mr. Boatwright's and Mr. Rosari's affidavit. I don't think Judge Schneider resolved that. In fact, I don't think there is any tension between Mr. Boatwright's and Mr. Rosari's affidavits with regard to anything that's material. Do you agree, though, that we're required to construe facts liberally in favor of AEB in this case when it's brought under a summary judgment? Of course. To the extent that the facts are relevant to considering whether the judgment was appropriate, someone who has summary judgment entered against them is entitled to every reasonable inference from that factual record, of course. What if the Act unappoints a registered agent of an administratively dissolved LLC? Well, one has to ask oneself what the word dissolved means. Dissolved means, to me, to break up, to get rid of, to throw in the garbage, to get rid of pieces. And so when something is dissolved, it loses its constituent parts. And one of those constituent parts would be its registered agent. And counsel pointed to, you know, counsel pointed out that the Act was amended several times. And he said in 2012 the only part that matters was 50B1. And it says whenever the limited liability company shall fail to maintain a registered agent in this state. And I would respectfully suggest that a limited liability company that doesn't file annual reports, doesn't pay its annual fee to the state, and doesn't do any business has failed to maintain itself. That's why the Secretary of State administratively dissolves it, because it's failed to maintain itself. And as part of being administratively dissolved or as part of failing to maintain itself, one could look at them in a sense as Jan said, or mirror images of each other. Constituent components of both of those things are that you lose the benefits, the support that you would otherwise have. You lose your managers, you lose your members, you lose your registered agent if you have intellectual property. Can I interrupt you for just one second, counsel? Sure, of course. When an LLC is administratively dissolved, there are other parts of the Act that say they continue because they have a period of winding down. So the building can't fall down. I'm just stopping you with that analogy. Because if you can continue to do business to wind down, which includes to sue and be sued, to lease property, all of those different things, somebody still has to be there. There's nothing here that I've read that says because you've administratively been dissolved, the members aren't still members, the officers aren't still officers, the registered agent isn't still the agent, at least during the period of winding down, whatever that period is. Are you disagreeing? In part, yes. An administratively dissolved company cannot file a fresh lawsuit. If an administratively dissolved company were to file a fresh lawsuit, that would be met with a 619 motion to dismiss. And that 619 motion to dismiss would typically be mooted by reinstating, by the company reinstating itself. But if the company didn't reinstate itself in response to that 619 motion, that 619 motion would typically be granted. So in your mind, is there no difference between a voluntarily dissolved LLC and an administratively dissolved LLC? Because you keep talking about it's dissolved, so it's done. It's defunct. It can't do anything. With regard to service of process, there is no difference. And I think that the difference, and this sort of interrelates with the question of the effect of the reinstatement 10 years later. Reinstatement ratifies what the LLC might have done in the meantime. But it doesn't ratify what was done to the LLC. And what would be the justice in that theory? So in essence, you're saying you can sue, but you can't be sued, but that's not what you said. No, you can't sue. That's not what you said. A dissolved LLC cannot sue. The justice is winding down is like moving out of the home or the office or the apartment, taking the possessions elsewhere, taking the possessions to the dumpster, taking the possessions of goodwill to the recycling. Winding down is not new initiatives. Winding down is not filing a new lawsuit. If somebody files a lawsuit against you while you're winding down, there's a mechanism for serving that was — it's been changed several times, but at the time of the disputed service, there was a mechanism for serving process. And that was through the Secretary of State. And that mechanism was not followed. And that was to the detriment of Mr. Azari's substantive rights. And the only meaningful way to look at substantive rights when talking about the substantive rights of a dissolved company is to look at how the effect on the members, right? So Mr. Azari says in the record, it's not disputed, that he knew nothing about the lawsuit, that he and Boatwright had parted ways, they were not doing business together. And they're now trying, 10 years later, to use the judgment against AMI that Judge Schneider vacated to foreclose on an apartment building that Mr. Azari owns in the city of Chicago in a foreclosure proceeding. And the pleadings from this — this is for Judge Robles and the Chantry's mortgage foreclosure section. The pleadings from this are, to some extent, in the record below. So — Can I just stop you for one second and ask another question?  I have not read Mr. Azari's affidavit in a while. But I didn't — I mean, you sound like it is in direct opposition to Mr. Boatwright's. And I just want to make sure. I'll look it up. But it sounds like you're saying he knew nothing about it at all. I know Mr. Boatwright — is it Wright? Is that correct? Boatwright? Boatwright, yeah. He said he was served personally and served as agent. He told the lawyer for Omni that he had been served. And he told Mr. Azari. I can't remember if it was in person or on a phone call. I thought Mr. Azari's affidavit said — I don't remember that conversation. I don't believe it happened. I don't think it's as strong as you're saying. Well, if I'm mischaracterizing or misremembering it, I apologize. The documents are in the record, of course. If you believe it's potentially material to your decision or to offer an opinion, you know, read them. I'm looking at a genuine issue of material fact. It's not a genuine issue of material fact that's relevant in our — it's not material. In our conception of the legal framework, obviously if your honors feel that it is potentially material based on a different conception of the legal framework than Judge — than we were able to persuade Judge Schneider to adopt, then that might result in a vacating and remanding for some kind of an evidentiary proceeding where both men could testify and she could make, you know, the kind of credibility determination that's possible from in-person testimony that isn't possible from — usually from comparing two affidavits. But, you know, these events were many, many years ago. It may not be easy. Mr. Goodman, another question for you. So the version of Section 1-30 that was applicable at the time does grant the power, as my colleague Justice Lampkin stated, to sue and be sued, to complain and defend, as well as to designate managers and appoint officers. And since you assert that an administratively dissolved LLC has no members, managers, or registered agent, then who causes the dissolved LLC to wield those powers? Well, the preamble to 181-30 says each limited liability company organized and existing under this Act. So our contention would be that an administratively dissolved or an intentionally dissolved limited liability company is no longer existing under the Act. Now, who wields the powers vis-à-vis the winding down? Obviously, some arrangement has to be made. It could be done by the members. It could be done by accountants, attorneys, you know, other people hired to — So who would hire them? The members would have to hire them. It would have — So you're conceding that members do survive, even administratively. You're trying to say that an administrative dissolution is the same as a voluntary dissolution, is what you're trying to say here today, I think. With regard to the residual winding down and with regard to the capacity to be served, yes, I believe, I would respectfully suggest, as I believe the Longwood Court and Judge Schneider found, they're the same. Even if the members or the manager or a receiver or trustee appointed by a court or somebody may have to make allowance for somebody to do the winding down, maybe sometimes things just are abandoned in the same way that restaurants sometimes close for remodeling, never to reopen. But as a practical matter, it is meaningless to say that a company that no longer exists is maintaining a registered agent. It is meaningless to say that a company that no longer exists is existing. It's a contradiction in terms. Except that Omni took no action to dissolve itself. That's the difference here, I think. Well, they, Mr. Bowright, the last registered agent, ignored the paperwork from the Secretary of State saying like, you know, time to file your annual report, your annual report's overdue, you're not in good standing, you've been dissolved. So something intentional instead of something negligent? There's no reason to believe it's negligent, Your Honor. It's perfectly privileged to choose to let a company lapse. I'm the registered agent at any point in time for several dozen entities, and I regularly have clients instruct me not to file, you know, not to file another annual report. You know, that they're intentionally letting the company go. Do you have evidence of that in this case, that there was an intent involved to let the company go? Well, the fact that Mr. Bowright and Mr. Azari did business together for a period of time, and then parted ways and had little or nothing to do with each other for 10 to 15 years after that, I think raises the reasonable inference that they both intended to stop the business that they were in. They had nothing to do with each other. But those are facts that have to be flushed out, right? Because this is summary judgment. I think they're facts that are reasonable or indisputable inferences from the facts that the parties both conceded below, that they're both, you know, didn't, neither of what were disputed below, that they're, while, as Justice Lankford pointed out, there might have been a little bit of tension between Mr. Azari's recollection and Mr. Bowright's statement about the communication they had about the, whether they had communication about the existence of the lawsuit. Other than that, there's no tension in their affidavits or in any other evidence in the record that this company was intentionally abandoned by its members, that they stopped doing business together in any form and had no contact with each other for a dozen or more years. I'd like to return to how counsel began his argument. He said that this case involves how to serve an administratively dissolved LLC, and that is, of course, not precisely correct. As counsel later acknowledged, the question was how you were supposed to do it in 2012, not how you might do it today. And counsel pointed out that the statute was amended in 2017, and he said perhaps that was in response to this Court's decision in his Fenn v. Longwood. But there's nothing, there's nothing suggesting that. There's no legislative history. There's nothing in the statute. There's no scholarship. There's no practitioner guidance. There's nothing. They cite nothing in support of that. That's just supposition. And so when counsel says, you know, it should be treated retroactively because it's procedural, not substantive, that's not a reasonable inference either, because this affects the substantive rights of Mr. Azari. The entire reason why Mr. Azari had Omni reinstated was in an attempt to assist him in defending against Omni's or, excuse me, against AEB's attempt to take away an apartment building that he owns. The right to continue owning. Do you know how much money to AEB? He doesn't owe anything to AEB. He filed a bankruptcy at some point in the last 15 or 20 years, and so he has no personal exposure to AEB or any successor in interest. But he was able to keep that building? Because I thought bankruptcy, you had to take everything except the personal rent. I'm not 100% sure what the series of events was, but I believe that there was no, and this might support a lashes argument down the road under the Supreme Court's decision in PNC v. Kuzmier, but I believe there was no equity in the building at the relevant time of the bankruptcy years and years ago, and I believe the reason why AEB brought the foreclosure in 2022 was because at some point between 2012 and 2022, Mr. Azari's financial prospects improved dramatically, which is, after all, one of the hopes of the bankruptcy process, that you were given a fresh start and that you'd do something with it, and he paid off the first mortgage. And so that apartment building went from being an underwater asset, burdened by debt, which exceeded its value, to something where AEB's second mortgage was now potentially valuable, and that's why 10 years afterward, they filed the foreclosure. Let me just add, because AEB didn't even inquire this, if the, what is it, the debt until, I think, is it 2018? You're acting like they were back in 2012 and knew all this history. That's just odd. Well, Your Honor, AEB stands for American Enterprise Bank, and American Enterprise Bank, through a series of mergers and acquisitions, became part of the Wintrust organization, and it may well be that discovery later on without regard to the outcome of this case, there will be discovery perhaps in the foreclosure, which will show whether the same people controlled or didn't control American Enterprise Bank, AEB, Wintrust, as part of these mergers and acquisitions. But without regard to whether the banking officers or the banking people knew or should have known about various things, the fact remains that the reason why this is now taking place 10 years after the fact is because of their desire to take away this apartment building. And I would respectfully suggest that that affects Mr. Azari's substantive rights and that that's the right way to look at the substantive rights of a dissolved company is to look at the substantive rights of its former members or managers. And that is exactly the same as the analysis that this Court performed in Iskand v. Longwood. Right? The counsel attempted to distinguish Longwood by saying that there was a fail piercing and the company wasn't reinstated and all that, but they're trying to do the exact same thing that the people were trying to do in Longwood. They're trying to use Omni to go at, to use a judgment against Omni to sort of pierce through it and go after Mr. Azari. That's really where, let's take it down to brass tacks. It's method of service on an administratively dissolved LLC. And you're saying that's not procedural? You're saying that's substantive? Yes. Okay. It's, you have the company's former members had the substantive right to notice under, for example, the procedural due process clause of the 14th Amendment of the United States Constitution and parallel provisions in the Illinois Constitution. And had they served the Secretary of State, the Secretary of State was supposed to give notice to the members and managers of the last address, and so were they. And so those things would have happened or should have happened, and there would be no dispute whatever about whether Mr. Azari knew or didn't know about this in 2012 because he, there was concern. So then it comes down to Boatwright and Boatwright's affidavit that he advised Mr. Azari, and so now we're back into a question of fact. That's one way of looking at it, Your Honor, but I would respectfully suggest that the fairer and more appropriate way to look at it would be to say that had American Enterprise Bank or ADB, trust me, whatever, had they complied with the statute and served the Secretary of State and served the members and managers by certified mail or whatever the Secretary of State regulations at the time required, there would be green cards showing definitively that Mr. Azari signed for it and received it. And that would satisfy his, you know, his substantive due process rights by giving him procedural due process. Conversely, not serving him, just handing a copy to Boatwright, did not necessarily result in Mr. Azari knowing about it. Even if there is a factual dispute in the record, there is no need to have an evidentiary hearing or to decide that factual dispute. That Mr. Boatwright was a 50 percent member, correct? I don't remember. So he was a 50 percent member? It was ruled by 6149, but they were wrong. I thought it was 50-50. And if he's a 50 percent member, then Omni knows because he's the member, 50 percent member. Omni knows. If Omni still existed, sure. If Omni was still a limited liability company, then his knowledge would be imputed to the organization, it would be imputed to Azari. But, yes, we are in a wind-up period. But I would respectfully suggest, and, you know, the Longwood Court held, that you have to serve the Secretary of State. And how is he going to have to abide by it? I would respectfully suggest that Judge Schneider got it right. She followed a published decision of this Court which said that someone who's suing a dissolved Illinois limited liability company has to sue the Secretary of State. And AEB or its predecessor of interest did not do that. And, therefore, the decision was correct and should be affirmed. Thank you. Counselor, you were about to ask. May it please the Court, I think the things were fairly far afield there. There's a lot I could touch, but I don't want to try to go into all that. So let me just pick a couple of things very quickly, if that's okay. Is that okay, Your Honor? Yes. Okay. So the first point I wanted to observe was at the beginning of Mr. Goodman's presentation, there was the discussion of, well, if a dissolved entity were to file a lawsuit, it could prosecute the lawsuit. There's actually a case that we reference in our brief. It's Henderson-Smith v. Nahamani Family Services. It's 323 Illinois App 3rd 15. It's a First Sister case in 2001 where there was a corporation that was administratively dissolved at the time it filed a lawsuit and got a judgment. And, of course, the defendants realized what had happened. And the entity was able to go back, have itself reinstated. And this Court said, yeah, that's fine. Reinstatement means that it's like the dissolution never happened. So there it was used as a sword against the defendant. And here as well, they can't use their dissolution and their reinstatement only as a sword against other parties. It works both ways. It can be used – their reinstatement can be used against them, which is exactly how this – how we're asking you to apply it here. They were reinstated. It's as if the dissolution never happened. The second point I want to try to address briefly is this question with the affidavits. The – at the summary judgment stage, the affidavits were submitted to demonstrate to try to make the point that even if this Court found – even if the trial court below found that Mr. Boatwright was no longer the agent, that the LLC in fact had actual service because both members were aware. I don't think this Court – I don't think the court below addressed that issue. I don't think this Court needs to address it. But I would simply make the observation that on the one hand, you have Boatwright's affidavit affirmatively stating that he remembered certain things. And on the other, you had Azari's affidavit saying, I don't remember. And I think we said in our briefs below, that's not – that's not enough to dispute the fact. So if this came down to a disputed issue of fact, our contention would be there are no disputed facts. You've got one person who says he remembers and one person who says, I don't. And that's – that's not enough to create a disputed issue of fact. The final thing I'll just try to clarify with respect to the mortgage here is I don't – I know Mr. Azari filed a 7 and a 13. I don't recall one of those was dismissed and one was completed and he obtained his discharge. I don't know whether the trustee abandoned this asset back to him or back to the LLC that owned it. In fact, right now it's owned by an LLC. It's not in Azari's name personally. I don't know if the trustee wasn't aware of the asset. I don't know if it was – even in Chapter 13, a debtor can – can retain its property if it agrees to basically, you know, continue to pay on the debt. The trustee in either case may have decided there was no – there was no value here. But regardless, AEB mergers foreclosure is based on the contention that when Azari did own the property in his own name, that he pledged that property through a mortgage. So his discharge in a bankruptcy is irrelevant. He has no personal liability on the judgment because of his discharge. But the mortgage, the pledge of the property remains valid. And that's the basis for the foreclosure to the extent that is helpful to this Court in answering any questions about the background on this case. Thank you, Your Honors. Thank you. I'm just going to make sure there's no further – all right. All right. I have to say this is an interesting case. And we are going to take it under advisement. We will now stand adjourned.